**Megan M. WILSON, et al., Plaintiffs,**

v.

**Stephen LAKNER, M.D., et al., Defendants.**

No. CIV. PJM 04–2110.

United States District Court, D. Maryland.

April 28, 2005.

---

John G. Gill, Jr., Esquire, Rockville, MD, Roger Mark Adelman, Esquire, Washington, DC, for Plaintiffs.

Roxanne L. Ward, Esquire, Annapolis, MD, Edward A. Gonsalves, Esquire, Andrew J. Marter, Esquire, Benjamin S. Vaughan, Esquire, Rockville, MD, for Defendants.

## *OPINION*

MESSITTE, District Judge.

### I.

A discovery dispute in this case raises the important question of the interplay between Federal Rule of Civil Procedure 30(b)(6) depositions and claims of privilege. The matter is before the Court on Plaintiff-requesting party's Rule 72(a) objections to an order of the Magistrate Judge.[1]

Megan Wilson[2] has sued two physicians and Adventist Healthcare, Inc. d/b/a/ Shady

---

1. Plaintiff will be referred to as the party "requesting" the 30(b)(6) deposition or the "requesting party." Defendant hospital will be referred to as the "responding party."

2. Wilson's husband is co-plaintiff in a count for loss of consortium. In this Opinion, however, "Wilson" refers to Megan Wilson only.

Grove Adventist Hospital for medical malpractice as a result of injuries she sustained when a foreign object was left in her stomach while undergoing a hysterectomy at the time of the birth of her child. In the course of discovery, Wilson noticed a Rule 30(b)(6) deposition for one or more designees of the hospital, defining *inter alia* the following areas which she wished to inquire into:

2. Any and all facts leading up to, concerning, or surrounding any sponge, soaking towel, or foreign object left in Megan Wilson's body after her giving birth and undergoing an operation and/or procedures to remove a placenta at Shady Grove Adventist Hospital on or about March, 2001.

3. The results of any investigation into the leaving of a sponge or soaking towel or foreign object in Megan Wilson's body on March 20, 2001. [The left-in sponge, towel, or foreign object was removed on August 5, 2002.]

7. Any and all facts concerning and/or surrounding the incident in which Megan Wilson was found with depressed respiration on August 5, 2002, while a patient at Shady Grove Adventist Hospital.

8. The results of any investigation into the cause or circumstances surrounding the incident in which Megan Wilson was found to have depressed respiration on August 5, 2002.

The hospital filed this response to the requests:

*RESPONSE # 2:* Objection. No corporate designee can or will testify to these matters. These are matters of fact and information responsive to this inquiry has been produced to the Plaintiffs. The Plaintiffs are referred to this Defendants' answer to the Plaintiffs' Interrogatory No. 1 to this Defendant, and the Plaintiff's medical records. This defendant will produce fact witnesses, where possible, upon request.

*RESPONSE # 3:* Objection. This area of inquiry is improper and, if any such information exists, it is non-discoverable as it involves attorney work-product, attorney/client communications, and/or risk management/peer review matters. A corporate designee will not be produced to testify regarding these matters.

*RESPONSE # 7:* Objection. No corporate designee can or will testify to these matters. These are issues of fact. The Plaintiffs are referred to this Defendants' answer to the Plaintiffs' Interrogatory No. 1 to this Defendant, and the Plaintiff's medical records. This defendant will produce fact witnesses, where possible upon request.

*RESPONSE # 8:* Objection. This area of inquiry is improper and, if any such information exists, it is non-discoverable as it involves attorney work-product, attorney/client communications, and/or risk management/peer review matters. A corporate designee will not be produced to testify regarding these matters.[3]

Shady Grove eventually designated three witnesses in response to the 30(b)(6) notice— Cindy Armstrong, Eileen Prinkey, and Barbara Painter, all of whom were deposed on different dates.

At the deposition of Armstrong, Shady Grove's counsel advised that no inquiry or investigation had been made by her over and above her personal involvement or knowledge of hospital procedures and that the only investigations were those carried out by counsel and risk management/peer review personnel of the hospital which were privileged.

Similarly, at the deposition of Prinkey it was apparent that virtually no attempt had been made to inform the witness as to the areas designated for inquiry over and above the policy or protocol of the hospital for counting sponges during operations or surgical procedures and that the witness had never attempted to speak to the scrub tech nurse or circulating nurse who were on duty during Wilson's March 20, 2001 surgery.

3. Shady Grove does not dispute that Wilson described "with reasonable particularity" the matters into which examination was requested and, in any event, the Court finds that that prerequisite was met.

Prinkey never attempted to learn how the sponge was left in Wilson's abdomen during the surgery.

At the Painter deposition, counsel for the hospital made the following statement:

> Let me answer that question. She's not a corporate designee for any particular provision here as set forth in this Notice. She is a witness who treated Mrs. Wilson in conjunction with the events that occurred following Mrs. Wilson's surgery on August 5, 2002, and as such, she has knowledge as to the care she rendered to Mrs. Wilson at the time.
>
> She is not a corporate designee on any other subject matters, unless, which I don't see right now—well, I see Number 5. She is a person who has contact with Mrs. Wilson. Actually that says March 19, so it would be No. 5 [later corrected to No. 7 consistent with SGH's November 30, 2004 letter.] * * * (pp. 11–12).

When asked,

> What preparation have you done for this deposition, Ms. Painter?

Painter answered:

> I have talked to my risk management representative and my counsel. [Clarified to counsel for Shady Grove Hospital]

Other than reviewing medical records concerning her own treatment of Wilson, Painter had never heard the term "Rule 30(b)(6)," had conducted no other investigation and had talked to no one other than counsel and risk management/peer review personnel.

Wilson thereafter filed a Motion to Compel which was referred to the Magistrate Judge for decision. She argued before the Magistrate Judge and she repeats here that a 30(b)(6) designee has a duty to be knowledgeable on the subject matter identified in the notice of deposition, including a duty to prepare to testify not only as to matters personally known to the deponent, but additionally as to those matters that should be reasonably known by the designating party. Wilson continues: If the deponent is unable to answer certain questions, the designating party has a duty to substitute one or more deponents. This, says Wilson, accords with the purpose of the rule to "curb 'bandying,' by which officers or managing agents of a corporation are deposed in turn, but each disclaims knowledge of facts that are clearly known to persons in the organization and thereby to it."

For its part, the hospital argued before the Magistrate Judge and reiterates here that it is not required to produce witnesses to testify to "any and all facts" pertaining to Wilson's two hospitalizations, either because it is not required to gather such facts or because any collected facts are covered by the attorney work product doctrine or because a Maryland state privilege shields risk management/peer review records and files.

The Magistrate Judge concluded that Wilson was entitled to discovery of "the corporation position" as to Wilson's two hospitalizations, but that the hospital did not "have to produce a witness who has gone out and interviewed everyone and determined how it happened." In the words of the Magistrate Judge: "This is, I presume, a situation where ... many people had a hand in this surgery. And ... [Plaintiff's counsel] can interview all those different people just as the corporate representative can." * * * "But other than gathering the records, they don't have to have the witnesses do anything else." The Magistrate Judge also determined that the hospital's "contentions" in the case (i.e., its theories or legal positions) should be inquired into by way of interrogatories rather than on deposition.

As for conducting depositions with respect to the investigations, Designated Subjects 3 and 8 in the Notice of Deposition, the Magistrate Judge accepted the representation of defense counsel that the only investigations performed in the case were those conducted by counsel and for risk management/peer review purposes. Implicitly, the former was deemed privileged by reason of the work product doctrine,[4] the latter by reason of

---

4. See Hickman v. Taylor, 329 U.S. 495, 510, 67 S.Ct. 385, 91 L.Ed. 451 (1947) ("Not even the most liberal of discovery theories can justify un-

warranted inquiries into the files and mental impressions of an attorney.") On the other hand, a party may gain access to certain docu-

§ 1–401(d) of Maryland Health Occupations Article (2004 supp.).[5] Wilson's appeal from the Magistrate Judge's decision followed.[6]

## II.

Rule 30(b)(6) permits a party to send a notice of deposition to an organization and "describe with reasonable particularity the matters in which examination is requested." The organization must then designate one or more persons to testify and indicate the matters in which the person or persons will testify. "The persons so designated shall testify as to matters known *or reasonably available to the organization.*" FED. R. CIV. P. 30(b)(6) (emphasis added).

The Advisory Notes to the 1970 amendments to the Rule are precisely as Wilson argued to the Magistrate Judge and as she repeats on this appeal. The 30(b)(6) procedure is meant to "curb the 'bandying'" of organizations where a series of organizational employees are "deposed in turn but each disclaims knowledge of facts that are clearly known to the persons in the organization and thereby to it." FED. R. CIV. P. 30(b)(6) Advisory Committee Notes.

■ There can be no question that the rule imposes a "duty to prepare the designee[ ] ... [that] goes beyond matters personally known to the designee or to matters in which that designee was personally involved." *Poole v. Textron, Inc.*, 192 F.R.D.

494, 504 (D.Md.2000), citing *United States v. Taylor,* 166 F.R.D. 356, 361 (M.D.N.C.1996). The designee must be prepared to the extent that matters are reasonably available, whether from documents, present or past employees, or other sources. *Id.* Contrary to the Magistrate Judge's ruling in this case, the organization *is* expected to create a witness or witnesses with responsive knowledge. *Taylor,* 166 F.R.D. at 361. In no sense is a 30(b)(6) deposition limited to a witness or witnesses who can authenticate documents or identify other possible fact witnesses.

■ The more difficult issue is how extensively the designee or designees must prepare. One widely cited standard suggests that the corporation "must make a conscientious good-faith endeavor to designate the persons having knowledge of the matters sought by [the requesting party] and to prepare those persons in order that they can answer fully, completely, and unevasively, the questions posed ... as to the relevant subject matters." *Mitsui & Co. v. Puerto Rico Water Res. Auth.,* 93 F.R.D. 62, 67 (D.P.R.1981). While the rule may not require absolute perfection in preparation—it speaks after all of matters known or "reasonably available to the organization"—it nevertheless certainly requires a good faith effort on the party of the designate to find out the relevant facts—to collect information, review documents, and interview employees with personal knowledge just as a corporate party

---

ments and tangible things prepared in anticipation of litigation or for trial upon a showing of substantial need and an inability without undue hardship to obtain the substantial equivalent of the materials by other means. Fed.R.Civ.P. 26(b)(3).

**5.** The statute provides:

(d) Proceedings, records and files confidential and not admissible or discoverable.

(1) Except as otherwise provided in this section [subsequently referring to certain instances not relevant to a civil action between private parties], the proceedings, records, and files of a medical review committee are not discoverable and are not admissible in evidence in any civil action.

Same—Exceptions.—Subsection (d)(1) of this section does not apply to:

    \*    \*    \*    \*    \*    \*

(2) Any record or document that is considered by the medical review committee and that oth-

erwise would be subject to discovery and introduction into evidence in a civil trial.

MD. HEALTH OCC., § 1–401(D)(1) (2004).

(b)(5) A Committee of the medical staff or other committee, including any risk management, credentialing, or utilization review committee established in accordance with § 19–319 of the Health—General Article, of a hospital, related institution, or alternative health care system, if the governing board of the hospital, related institution, or alternative health care system forms and approves the committee or approves the written bylaws under which the committee operates.

*Id.,* § 1–401(b)(5).

**6.** Wilson does not dispute that Shady Grove's risk assessment/peer review team is a "medical review committee" within the meaning of the statute.

is expected to do in answering interrogatories.[7] *See* Fed.R.Civ.P. 33. Wilson is not obliged to depose a string of hospital employees, none of whom is able to speak for the hospital as to how the incident or incidents in question occurred, nor indeed is a 30(b)(6) requesting party limited to conducting her factual inquiry via interrogatories.[8]

■ The work product doctrine provides no shield to the hospital in this regard. While counsel's own investigation into the facts of the case is substantially protected by the doctrine, and while the proceedings of any investigation conducted for purposes of risk assessment or peer review may be privileged by reason of the Maryland statute,[9] the fact remains that a designated witness or witnesses must still be prepared to respond to the 30(b)(6) notice. If that preparation means tracking much the same investigative ground that counsel and the risk management/peer review committee have already traversed, but independently of that investigation, so be it. Defense counsel may wish to exercise caution in preparing the witness or witnesses with privileged documents—otherwise the privilege may be waived as to those documents—but it is simply no answer to a 30(b)(6) deposition notice to claim that relevant documents or investigations are privileged and that therefore no knowledgeable witness can be produced.[10]

To the extent that this may place the hospitals in something of a dilemma, it would seem to be one of their own creation. Despite the logical assumption that a hospital where possible malpractice has occurred might, in the ordinary course of business, be expected to make a record of the problem and an analysis of why it occurred, Maryland law, presumably at the hospitals' urging, has thrown a cloak over their investigations by permitting them to characterize the only reports they prepare as "risk assessments" protected by the Maryland statute. While the hospitals may thus wish to argue that there is no "available" record of the so-called malpractice, that is not the end of the matter.

There are undoubtedly persuasive policy reasons favoring confidentiality of risk assessment/peer review investigations. Indeed, the Court emphasizes that the results of the investigations *per se* are not discoverable, just as those of defense counsel's investigation may not be; but this is not the same as saying that a 30(b)(6) witness (or witnesses) is not obliged to investigate the facts of the incidents, independently of counsel's or the risk assessment/peer review team's conclusions.[11] Moreover, fairness would seem to require that, if the defendant hospital is going to stand on the proposition that the results of its investigations are privileged, Wilson's counsel should be able to inquire of an appropriate hospital designee or designees precisely which documents were or were not made available to the risk assessment/peer review team and whether and for what reason privilege is claimed as to those documents. In appropriate circumstances an *in camera* review by the Court may be called for.

■ A further consideration pertains to the effect that various responses by the responding party to 30(b)(6) depositions may have. Certainly to the extent that a designee is not responsive to a notice of deposition—claiming no or limited knowledge—the

---

7. Obviously a rule of reason applies. There is no obligation to produce witnesses who know every single fact, only those that are relevant and material to the incident or incidents that underlie the suit.

8. Whereas the *facts* of a relevant incident or incidents are proper for 30(b)(6) inquiry, the *contentions, i.e.* theories and legal positions, of an organizational party may be more suitably explored by way of interrogatories and the Court may properly order (as the Magistrate Judge did here) that contentions only be inquired into in this fashion.

9. *See Kappas v. Chestnut Lodge, Inc.,* 709 F.2d 878 (4th Cir.1983).

10. Similarly the mere fact that counsel for the responding party might prepare a witness or witnesses for a 30(b)(6) deposition would not create an attorney-client privilege as to the facts of the case that the attorney and the witness might discuss.

11. The Court notes that the Maryland statute expressly provides that documents do not become privileged merely because they are relied upon by the risk assessment team. *See Md. Health Occ.,* § 1–401(d)(2).

responding party may be subject to sanctions. *See, e.g., Taylor,* 166 F.R.D. at 363. This is particularly true where a more knowledgeable witness might have been produced. *See Resolution Trust Corp. v. Southern Union Co.,* 985 F.2d 196 (5th Cir.1993). Again it is a matter of whether there have been good faith efforts to prepare, so that if a witness has rendered substantial "testimony concerning the subject areas of their designations," sanctions might well not be in order. *Zappia Middle East Const. Co. v. The Emirate of Abu Dhabi,* 1995 WL 686715 at *9, 1995 U.S. Dist. LEXIS 17187 at *26–27 (S.D.N.Y.1995). However, even despite a forthcoming witness, if unanswered information is significant enough, the 30(b)(6) deposition may have to be reconvened, possibly with a new witness. *See Resolution Trust Corp.,* 985 F.2d at 197; *Marker v. Union Fid. Life Ins. Co.,* 125 F.R.D. 121, 126 (M.D.N.C.1989).

■ Additionally, depending on the nature and extent of the obfuscation, the testimony given by the non-responsive deponent (*e.g.* "I don't know") may be deemed "binding on the corporation" so as to prohibit it from offering contrary evidence at trial. *See, e.g., Rainey v. Am. Forest and Paper Assoc.,* 26 F.Supp.2d 82, 94–95 (D.D.C.1998); *Taylor,* 166 F.R.D. at 362. Even to the extent that contradictory evidence might be permitted at trial, *see, e.g., A.I. Credit Corp. v. Legion Ins. Co.,* 265 F.3d 630, 637 (7th Cir.2001), *Taylor,* 166 F.R.D. at 363, the Court could both permit cross-examination of any witness who contradicted the sworn testimony of the 30(b)(6) witness or witnesses and order the witness to testify further why in good faith opposing counsel was not apprised of the amendments prior to trial. *Id.*

■ In the end, a responding party is not without certain protections. Motions for protective orders may object to the timing and/or extent of the 30(b)(6) depositions; indeed, a party may always move to amend a deposition response if new and different information surfaces post-deposition. *See, e.g., Schwarzkopf Tech. Corp. v. Ingersoll Cutting Tool Co.,* 142 F.R.D. 420, 421–22 (D.Del. 1992).

But Rule 30(b)(6) means what it says. Corporations must act responsively; they are not entitled to declare themselves mere document-gatherers. They must produce live witnesses who know or who can reasonably find out what happened in given circumstances.

Defendant hospital did not do so here. It must do so now.

Under Rule 72(a), "[t]he district judge to whom the case is assigned shall consider such objections and shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law." Fed.R.Civ.P. 72(a). The Court finds the Magistrate Judge's Order contrary to law insofar as it held that Shady Grove only had to respond to designated deposition Items 2 and 7 by way of interrogatories. The hospital must prepare and produce one or more deponents knowledgeable as to the facts of the incidents referred to in those items. The Magistrate Judge did not err, however, in limiting Wilson to inquiring as to the contentions of Shady Grove, *i.e.* its theories or legal contentions, by way of interrogatories.

While the Magistrate Judge did not err in holding that the investigations by counsel or risk management/peer review personnel are privileged, this emphatically does not mean that Shady Grove does not have an obligation to produce and prepare, if necessary, one or more witnesses who have independently investigated the incidents that are the subject of this suit in order to be able to respond appropriately at a 30(b)(6) deposition.

Should Wilson's counsel elect to reconvene 30(b)(6) depositions, the Court will entertain from her an appropriate motion for attorney's fees and costs.

A separate Order will be ENTERED.

### ORDER

UPON CONSIDERATION of Plaintiffs' Rule 72(a) Objections to Magistrate Judge's Amended Order of March 1, 2005 and Defendants' Opposition thereto, it is for the reasons set forth in the accompanying Opinion, this 28th day of April, 2005:

ORDERED:

1) Plaintiffs' Objections [Paper No. 35] are SUSTAINED in part and OVERRULED in part;

2) Said objections are SUSTAINED in that Plaintiff Wilson may RECONVENE Rule 30(b)(6) depositions as to Designated Items 2 and 7 in the original Notice of Deposition and Defendant Shady Grove Adventist Hospital shall RESPOND thereto consistent with the Court's Opinion;

3) Said objections are OVERRULED in that Wilson may only inquire of Shady Grove's contentions in that case (*i.e.* its theories or legal positions), by way of interrogatories; and

4) Wilson MAY FILE a Motion for Attorneys Fees and Costs in connection with any reconvened depositions, consistent with the Court's Opinion.